UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joan F. Gill,<br>        *Plaintiff*,<br>        *v.*<br>American Red Cross,<br>American Red Cross Connecticut Region, and<br>American National Red Cross<br>        *Defendants*. | Civil No. 3:12cv348 (JBA)<br><br><br>March 19, 2013 |

**RULING ON MOTION TO DISMISS**

Plaintiff Joan Gill as successor, executrix, and surviving spouse of Frank A. Gill filed suit against the American Red Cross, a congressionally chartered "non–profit, tax–exempt, charitable institution," alleging wrongful death (Count One) pursuant to Connecticut General Statutes § 52-555 and loss of consortium (Count Two) for the circumstances arising out of her husband's death shortly after donating blood in February 2010. Defendants move [Doc. # 17] to dismiss Plaintiff's Complaint for lack of personal jurisdiction because she has not complied with the requirements of Conn. Gen. Stat. § 52-190a, requiring a good faith certificate or similar health care provider opinion letter for claims alleging medical negligence. Because the Court concludes that the Complaint clearly is alleging negligence related to the exercise of medical judgment, Defendants' motion will be granted.

## I.    Factual Allegations

On February 9, 2010, Plaintiff's decedent, age 70, went to Westfield Congregation Church in Danielson, Connecticut to donate blood. (Compl. ¶¶ 4–5.) There, an "agent, apparent agent, servant and/or employee of the American Red Cross . . . drew blood from

Mr. Gill." (*Id.* ¶ 6.) Shortly after giving blood, Mr. Gill collapsed and died a few days later. (*Id.* ¶¶ 7, 9.)

Plaintiff alleges that Defendants were negligent in failing to perform appropriate tests prior to drawing Mr. Gill's blood, including "pulse rate, blood pressure, temperature, hemoglobin, hematocrit and platelet count" (*id.* ¶ 8a), failed to: "conduct the appropriate examination," "to follow proper protocol and take a thorough history," and "to monitor following the procedure" (*id.* ¶ 8b–d). Plaintiff also alleges that Defendants failed to train their personnel in these areas. (*Id.* ¶ 8e.)

Plaintiff's Complaint claims that Defendants failed to warn Mr. Gill of the attendant dangers and risks and permitted the procedure though they knew or should have known that:

- unsafe levels existed causing dangers [that] could be fatal;
- medications which were contraindicative to donating blood were in his system;
- he had unsafe levels of iron and lack of hydration;
- Mr. Gill should not have given blood on February 9, 2010;
- It was potentially dangerous for Mr. Gill to give blood on February 9, 2010 because of his medical condition; and that they should not have allowed him to give blood that day.

(*Id.* ¶ 8g–l.)

The Complaint continues, that as a result of the Defendants' alleged carelessness and negligence, Mr. Gill was "caused to suffer significant injuries, all of which caused him physical and mental pain and suffering and ultimately resulted in a violent and untimely death on February 14, 2010, including anastomotic brain injury, cardiac arrest and ventricular fibrillation." (*Id.* ¶ 9.)

## II.   Discussion

Defendants move to dismiss the Complaint in its entirety, because Plaintiff has failed to attach the opinion letter required under Conn. Gen. Stat. 52-190a(a),[1] without which service of process is insufficient and dismissal for lack of personal jurisdiction is required. They argue that because Plaintiff's allegations of negligence concern conduct of a specialized medical nature beyond lay knowledge, this complaint sounds in medical malpractice and requires the opinion letter. Plaintiff asserts that her complaint only alleges ordinary negligence and that her allegations do not fit the Connecticut Supreme Court's criteria for medical malpractice, because no healthcare provider–patient relationship[2] is inferable from Mr. Gill's voluntary blood donation at a church, nor is

---

[1] Conn. Gen. Stat. § 52-190a provides:

(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider.

[2] "Health care provider" is defined by the General Statutes as: "any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment." Conn. Gen. Stat.  § 52-184b.

medical diagnosis or treatment implicated. Plaintiff argues, therefore, that the requirements of *Trimel* are not met and the personal jurisdiction requirement of Conn. Gen. Stat. § 59-190a does not apply here.

Conn. Gen. Stat. § 52-190a requires a substantive determination of whether the claim is in actuality one of ordinary negligence or medical negligence, requiring a close review of the circumstances under which the negligence occurred in order to draw that line. The Connecticut Appellate Court has set out a three–factor test:

> Whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional–patient relationship and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment.

*Trimel v. Lawrence & Mem'l Hosp. Rehabilitation Ctr.,* 61 Conn. App. 353, 357 (2001) (cited with approval and adopted in *Gold v. Greenwich Hosp. Ass'n,* 262 Conn. 248, 254 (2002)). In *Trimel*, the Appellate Court concluded that the plaintiff, who suffered from multiple sclerosis and sued her rehabilitation center for failure to supervise her while she transferred herself out of her wheelchair, resulting in her fall, was claiming medical malpractice not ordinary negligence. "[T]he plaintiff was in the defendants' facility for treatment, the plaintiff's treatment had included unassisted transfers with supervision, and the plaintiff's injury resulted from a mishap during a transfer without supervision. It was a medical professional's judgment that allowed the transfer to proceed unassisted." *Id.* at 363–64.

Defendants urge that Plaintiff's earlier motion for extension of the statute of limitations pursuant to § 52-190a(b)[3] to permit compliance with the opinion letter

---

[3] Conn. Gen. Stat. § 52-190a(b) provides:

requirement belies her current characterization of her claim as one of ordinary negligence.

Defendants rely on three cases against the American Red Cross in support of their argument that this is a medical malpractice cause of action. The two which were decided on summary judgment[4] are less helpful to the analysis at the motion to dismiss stage, although they both required evidence of standards of care for drawing blood. However, the third case, *Bauman v. American National Red Cross*, 262 F. Supp. 2d 965, 968 (C.D. Ill. 2003), specifically addressed allegations of "where and how to inject a needle for drawing blood," and concluded:

> The standard of care governing this type of decision clearly involves medical learning or principles, and is not within the knowledge of most lay people. The allegation that the agents, representatives, or employees of the Red Cross drew Baumann's blood in an improper manner "is effectively an allegation that [they] showed a want of skill . . . in the preparation and performance of [their] medical duties" and "failed to exercise adequate care in rendering service," which "is one definition of malpractice."

---

> Upon petition to the clerk of the court where the civil action will be filed to recover damages resulting from personal injury or wrongful death, an automatic ninety–day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section.

[4] *See Milton v. American Red Cross*, 19 F. App'x 676 (9th Cir. 2001) (in a medical malpractice action, affirming grant of summary judgment where the plaintiff had failed to produce any evidence "regarding whether Red Cross deviated from the established standard of health care when drawing her blood."); *Clark v. American Nat. Red Cross*, No. Civ. 04-765-HA, 2006 WL 696256, at *1 (D. Or. 2006) (In a medical malpractice action where plaintiff alleged that "the insertion of a large drawing needle into plaintiff's left arm caused immediate sharp pain and damaged plaintiff's "left lateral antebrachia cutaneous nerve" severely," the defendant was entitled to summary judgment because "Plaintiff fails to establish what the reasonable professional practice for blood draws is in the Portland community, a question that falls outside the knowledge of a typical jury. Plaintiff also fails to raise any material issue of fact regarding in what manner the venipuncturist might have failed to comply with that standard.").

5

> Therefore, although Baumann was not a "patient" receiving "medical treatment" in the traditional sense from the Red Cross, . . . this case is one for medical malpractice rather than simple negligence.

262 F. Supp. 2d at 968 (internal citations omitted).

While Mr. Gill as a blood donor may not fit into the traditional paradigm described in *Trimel* of a "patient" receiving "medical treatment," Plaintiff's Complaint contains allegations that undoubtedly involve the exercise of medical judgment— appropriate testing, including tests regarding "pulse rate, blood pressure, temperature, hemoglobin, hematocrit and platelet count." (*Id.* ¶ 8a.) Lay jurors would have no idea what such test results mean nor what conduct constitutes negligence without medical professional testimony. Further, Plaintiff makes no claim that Defendants' personnel collecting Mr. Gill's blood acted outside of a regulated context under medical supervision, particularly where FDA regulations for blood collection require this function to be performed by qualified physicians or trained assistants. *See* 21 C.F.R. § 640.4.[5] The testing, protocol, and monitoring deficiencies Plaintiff alleges unquestionably implicate a medical assessment as to whether Mr. Gill was or was not a medically appropriate candidate for a safe blood donation, *see Trimel*, 61 Conn. App. at 357, which is necessarily

---

[5] "Collection of the blood," 21 C.F.R. § 640.4(a) provides:
Supervision. Blood shall be drawn from the donor by a qualified physician or under his supervision by assistants trained in the procedure. A physician shall be present on the premises when blood is being collected, except that blood may be collected when a physician is not present on the premises, provided the establishment (1) maintains on the premises, and files with the Center for Biologics Evaluation and Research, a manual of standard procedures and methods, approved by the Director of the Center for Biologics Evaluation and Research, that shall be followed by employees who collect blood, and (2) maintains records indicating the name and qualifications of the person immediately in charge of the employees who collect blood when a physician is not present on the premises.

beyond a layperson's ability to make an informed judgment about. Although Mr. Gill's purpose in donating blood was altruistic and not to obtain treatment or diagnosis in a traditional sense, the alleged failures of care are for medical negligence in assessing and monitoring his medical condition in Defendants' implementation of their decision to collect his blood. Consequently, this action cannot be one of ordinary negligence, and Plaintiff's failure to obtain and file an opinion letter requires that the action be dismissed pursuant to Conn. Gen. Stat. § 52-190a(c).[6]

### III.   Conclusion

For the reasons discussed above, Defendants' motion [Doc. # 17] to dismiss Plaintiff's Complaint is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of March, 2013.

---

[6] "The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action." Conn. Gen. Stat. § 52-190a(c).